UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SASSAN ABDOLLAHZADEH, | ) | |
| | ) | Civil Action No. 05-40067 FDS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENIS RIORDAN, District Director | ) | |
| of the Boston District Office of the | ) | |
| Bureau of Citizenship and Immigration | ) | |
| Services, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff Sassan Abdollahzadeh, a native and citizen of Iran, brings this suit to compel defendants Denis Riordan, District Director of the Boston District Office of the Bureau of Citizenship and Immigration Services ("USCIS"), et al., to adjudicate his pending Application for Adjustment of Status to Lawful Permanent Resident ("I-485 Application"). Plaintiff alleges that he filed his I-485 Application on April 13, 2002, that he was interviewed by a designated agent of the defendants on or about October 21, 2004, and that there has been no decision rendered on his I-485 Application. See First Amended Complaint for Mandamus ¶¶ 10-18. By way of remedy, plaintiff seeks "an order to compel the Defendants and those working under them to adjudicate the Plaintiff's pending application for Adjustment of Status * * *." Id.¶ 9.

Plaintiff's motion should be denied. This Court lacks mandamus jurisdiction because matters solely within the discretion of defendants are not the proper subject of a claim for mandamus relief.

And, while this Court does have jurisdiction to consider plaintiff's claims under Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), because plaintiff's background checks require further investigation, defendants cannot be said to have "unlawfully withheld or unreasonably delayed" the adjudication of plaintiff's I-485 application.

## STATUTORY AND REGULATORY BACKGROUND

Prior to 1952, aliens who desired to become permanent residents were required "to leave the country and apply for an immigrant visa at a consulate abroad." Elkins v. Moreno, 435 U.S. 647, 667 (1978); accord Randall v. Meese, 854 F.2d 472, 473 (D.C. Cir. 1988) ("[T]o achieve reclassification from nonimmigrant to permanent resident status, [an] alien had to leave the country and, in the ordinary course, apply to a United States consular officer abroad for an immigrant visa.") (citations omitted). In enacting the Immigration and Nationality Act of 1952 ("INA"), Congress recognized that there were "aliens in this country in nonimmigrant status who could show they qualified for immigrant status and who wished to avoid a costly trip out of the country merely to obtain a visa." Chen v. INS, 11 F.3d 925, 928 (9th Cir. 1993). In particular, Congress, in section 245 of the INA, created a mechanism for eligible aliens to seek a discretionary adjustment of immigration status to that of a lawful permanent resident of the United States. See 8 U.S.C. § 1255(a).

Under section 245 of the INA, the Attorney General has discretion to adjust the status of an eligible alien already present in the country provided that several prerequisites have been met: (1) he or she must have been "inspected and admitted or paroled" into the United States; (2) he or she must have submitted an application for adjustment of status; (3) an immigrant visa must be "immediately available" to the alien at the time the adjustment application is filed; and (4) he or she must be "admissible to the United States for permanent residence." 8 U.S.C. §1255(a). In addition,

an adjustment applicant must also demonstrate that he meets the relief in the exercise of the Attorney General's discretion. See 8 U.S.C. § 1255(a); accord Elkins, 435 U.S. at 667 ("[A]djustment of status is a matter of grace, not right.").

When a person applies to USCIS for adjustment of status to lawful permanent resident, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for that benefit and that he or she is not a risk to national security or public safety, as well as to ensure that the alien is eligible for the benefit which he or she is seeking. See Declaration of Denis Riordan ("Riordan Decl.") ¶ 1. These security and background checks include a record check of the alien made against the Department of Homeland Security's ("DHS") own immigration systems; a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records on the alien *(e.g.* arrests and convictions); a check of the DHS-managed Interagency Border Inspection System that contains records and "watch list" information from more than twenty law enforcement and intelligence agencies; and a national security check, which is run against databases containing information that is not necessarily revealed by the FBI's fingerprint check. Id. ¶ 2.

On occasions, law enforcement checks (including FBI fingerprint checks and national security checks) have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking naturalization, which has resulted in the alien being found ineligible for naturalization or other benefits. Id. If a background or security check reveals derogatory information about an alien, USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all information concerning the derogatory information. Id. ¶ 3.

In 1997, Congress enacted legislation pursuant to its Spending Clause authority that underscores the importance the Legislative Branch places on the favorable completion of a background investigation in immigration matters, at least in relation to naturalization proceedings. That legislation mandated that "none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997." Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), see 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

## FACTS AND PROCEEDINGS

Plaintiff claims to be a native and citizen of Iran. See Complaint for Mandamus ¶ 1. Plaintiff alleges that, on August 26, 1996, he filed an I-485 Application for Adjustment of Status to Lawful Permanent Resident, and that, on December 4, 1996, he was interviewed by an agent of the former Immigration and Naturalization Service ("INS") in Boston, Massachusetts, after which time his application was continued. Id. ¶¶ 17-18. Thereafter, on December 28, 2000, plaintiff alleges that the INS requested additional information from him in connection with his application, which he supplied on or about January 4, 2001. Id. ¶¶ 19-20. Plaintiff alleges that, to date, his application remains unadjudicated. Id. ¶ 23.

As set forth in the Declaration of Denis Riordan, District Director of the Boston District Office of USCIS, a national security check relating to plaintiff's name was initiated on December 21, 2004, pursuant to the procedures that were in effect on that date. Declaration of Denis Riordan

¶ 6. No definitive response was received by USCIS in response to this request for approximately six months. Id. USCIS thereupon took steps to expedite that request. Id, Specifically, on June 29, 2005, a District Adjudications Officer faxed a "screen printout" indicating that plaintiff's national security check was pending to a contact person in the headquarters office of the USCIS, who then contacts another agency of the federal government to request expeditious handling of the national security check. Id.

USCIS has now received the results of the background checks relating to the plaintiff. Id. ¶ 8. The information received requires further investigation and inquiry, and USCIS has determined that an interview of the plaintiff is necessary before any final action can be taken on his application for adjustment of status. Id.

## ARGUMENT

**I.   THIS COURT LACKS MANDAMUS JURISDICTION**

"Jurisdiction is, of necessity, the first issue for an Article III court,'" DSMC Inc. v. Convera Corp., 349 F.3d 679, 682 (D.C. Cir. 2003) (emphasis supplied) (quoting Tuck v. Pan American Health Org., 668 F.2d 547, 549 (D.C. Cir. 1981)), and it is well-established that "federal courts are not at liberty to overlook limitations on their subject matter jurisdiction." Francis v. Goodman, 81 F.3d 5, 8 (1st Cir. 1996); accord Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998). In this case, plaintiff asserts that jurisdiction lies under the mandamus statute, 28 U.S.C. § 1361, and, alternatively, under the federal question statute, 28 U.S.C. § 1331,and the Administrative Procedure Act ("APA"), 5 U.S.C. §551 et seq.. As we now demonstrate, this Court lacks mandamus jurisdiction, but does have jurisdiction to entertain plaintiff's claims under the federal question statute and the APA.

A.     **Mandamus Jurisdiction**

"The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)).  In this case, jurisdiction under the mandamus statute is lacking in this case because "matters solely within the discretion of the INS * * * are not reviewable under * * * 28 U.S.C. §1361." Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978).  Inasmuch as the ultimate decision whether to grant or deny plaintiff's adjustment application is committed to the discretion of the Attorney General by statute, see 8 U.S.C. § 1255(a), "courts have repeatedly found that mandamus relief is not available for delays in processing applications." Checknan v. McElroy, 313 F. Supp.2d 270, 274 (S.D.N.Y. 2004) (citing Sadowski v. INS, 107 F. Supp.2d 451, 453 (S.D.N.Y. 2000)); but see Harriott v. Ashcroft, 277 F. Supp.2d 538 (E.D. Pa. 2003); Nyaga v. Ashcroft, 186 F. Supp.2d 1244 (N.D. Ga. 2002).  As the United States District Court for the Southern District of New York has persuasively analyzed, "[a]djustment of immigration status, however, is a discretionary act, and therefore, [i]n keeping with the plain language [of 8 U.S.C. § 1255(a) ], courts have consistently found mandamus inappropriate in actions based on the government's failure to adjust an applicant's status.  The Court therefore lacks subject matter jurisdiction to compel agency action by writ of mandamus in this case." Saleh v. Ridge, 367 F. Supp.2d 508, 511 (S.D.N.Y. 2005) (internal quotation omitted).  Consequently, this Court lacks mandamus jurisdiction.

### B. APA and Federal Question Jurisdiction

Plaintiff alternatively invokes jurisdiction under the under the federal question statute, 28 U.S.C. § 1331, and the APA. We concede that this Court has jurisdiction to consider plaintiff's allegations that USCIS has unlawfully delayed adjudication of his application for adjustment of status under the APA and the general federal question statute. Numerous courts have held that the APA, in conjunction with the federal question statute, vest the federal courts with jurisdiction to consider a claim that the delay in adjudicating an alien's application for adjustment of status or for other relief is unreasonable, so long as that claim is not "patently without merit." See, e.g., Saleh, 367 F. Supp.2d at 511-12 ("Plaintiff's APA section 555 claim has been pending for almost five years by the time the instant Complaint was filed. Under these circumstances, Plaintiff's APA section 555 claim is not patently without merit, and the Court has jurisdiction of Plaintiff's APA claim pursuant to 28 U.S.C. § 1331."); Alkenani v. Barrows, 336 F. Supp.2d 652, 656-57 (N.D. Tex. 2005) ("The court therefore concludes that subject matter jurisdiction is proper under the APA and 28 U.S.C. § 1331."); Bartolini v. Ashcroft, 226 F. Supp.2d 350, 354 (D. Conn. 2002) (finding that plaintiffs' claim "cannot be said to be patently without merit" and concluding that "subject matter jurisdiction exists based on 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b)"); Yu v. Brown, 36 F. Supp.2d 922, 930 (D.N.M. 1999) ("[C]ourts have specifically recognized jurisdiction under § 1331 and the APA to hear challenges to INS delays processing visa, LPR, and citizen applications.") (citing cases).

## II. DEFENDANTS HAVE NOT TRANSGRESSED THE APA

The APA provides that "within a reasonable time, each agency shall proceed to resolve a matter presented to it," 5 U.S.C. § 555(b), and permits judicial review of agency action "unlawfully


withheld or unreasonably delayed." 5 U.S.C. § 706(1). In this case, plaintiff has presented a plausible APA claim, inasmuch as his application for adjustment of status has been pending since August 1996.

The question whether defendants have transgressed the APA should not be based simply on the length of the pendency of plaintiff's application, but also should take into account the steps that the agency has taken to resolve the matter. Here, defendants have taken aggressive steps to resolve plaintiff's application for adjustment of status since December 2004. Specifically, on December 21, 2004, a national security check relating to plaintiff's name was initiated pursuant to the procedures that were in effect on that date. Riordan Decl. ¶ 6. No definitive response was received by USCIS in response to this request for approximately six months. Id. USCIS thereupon took steps to expedite that request. Id, Specifically, on June 29, 2005, a District Adjudications Officer faxed a "screen printout" indicating that plaintiff's national security check was pending to a contact person in the headquarters office of the USCIS, who then contacts another agency of the federal government to request expeditious handling of the national security check. Id. USCIS has now received the results of the background checks relating to the plaintiff. Id. ¶ 8. The information received requires further investigation and inquiry, and USCIS has determined that an interview of the plaintiff is necessary before any final action can be taken on his application for adjustment of status. Id.

In view the fact that plaintiff's background checks require further investigation, USCIS cannot be said to have "unlawfully withheld or unreasonably delayed" the adjudication of plaintiff's application for adjustment of status. The premature granting of an application for adjustment of status could have serious adverse consequences to our nation's safety, inasmuch as a person who is a risk to the public or the nations's security that has been granted adjustment of status could obtain

employment in sensitive industries and travel on transportation carriers more easily. Id. ¶ 5. Thus, regardless of what may have transpired in the past, USCIS taking reasonable and measured steps to resolve plaintiff's application, and those steps do not run afoul of the APA.

This conclusion finds support in the recent decision in Danilov v. Aguirre, 370 F. Supp.2d 441 (E.D. Va. 2005). In that case, an alien brought suit to compel action on his application for naturalization. The district court held that it lacked jurisdiction under 8 U.S.C. §1447(b) to consider the alien's claim because the "examination" of the alien would not be completed until the background checks conducted by the Federal Bureau of Investigation were completed. Id. at 443-44. Moreover, and of particular relevance to this case, the district court held that it also did not have jurisdiction under the APA, reasoning that "[t]he APA permits judicial review of agency action 'unlawfully withheld or unreasonably delayed.' Yet here, any delay in the processing of plaintiff's naturalization application was not the result of any inaction or unreasonableness on the part of the governing agency; instead, it was the result of the legal requirement that IS await receipt of the FBI's completed background investigation before acting on plaintiff's application." Id. at 445 (internal citation omitted). Similarly here, because plaintiff's background checks require further investigation, defendants cannot be said to have "unlawfully withheld or unreasonably delayed" the adjudication of plaintiff's I-485 application.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's request for mandamus relief for lack of subject matter jurisdiction, and deny plaintiff's motion for summary judgment under the APA.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>By: /s/ Mark T. Quinlivan
>MARK T. QUINLIVAN
>Assistant U.S. Attorney
>John Joseph Moakley U.S. Courthouse
>1 Courthouse Way, Suite 9200
>Boston, MA 02210
>617-748-3606

Dated: October 31, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Sassan Abdollahzadeh

Plaintiffs

    VS                             Case No. 05-40067-FDS

Denis Riordan, Eduardo Aguirre Jr., Michael Chertoff, and the U.S. Department of Homeland Security Bureau of Citizenship & Immigration Services

Defendants

I, Denis Riordan, hereby declare:

I am the District Director of the Boston, MA District office for the United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security (DHS). I oversee the adjudication of applications for benefits including applications for adjustment of status in the Boston District. In my capacity as District Director and based upon reasonable inquiry and my knowledge, information and belief, I declare the following:

1. When a person applies to USCIS for adjustment of status to lawful permanent resident, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for that benefit and that he or she is not a risk to national security or public safety. In addition to record checks against DHS' own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g. arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies. IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity; and (c) a national security check, which is run against databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

2. These law enforcement checks have revealed significant derogatory information on alien applicants for immigration benefits, including applicants seeking adjustment of status, which has resulted in the alien being found ineligible for the benefit and USCIS' denial of the application. Where applicable, the information has also resulted in aliens

being arrested by law enforcement agencies or charged under removal grounds and deported/removed from the United States following a final EOIR order. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or national security check, but has not been revealed by a fingerprint check alone.

3. If a background or security check reveals derogatory information on the alien (i.e. a "hit"), then USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory information. Depending on the information, DHS/CIS may place the alien in removal proceedings to remove him/her from the United States.

4. Although the alien's file may show that an FBI fingerprint check was performed these checks frequently do not reveal the types of derogatory information described above, particularly when it is not information that has resulted in an arrest or criminal conviction. For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or a national security check for investigation databases.

5. It would be unconscionable and potentially risk the safety and security of the nation for USCIS to grant United States citizenship without ensuring that the government's law enforcement databases do not contain significant derogatory information about the alien. With lawful permanent resident status, a person who is a risk to the public or the nation's security could obtain work in sensitive industries and travel on transportation carriers more easily.

6. Subject's application for lawful permanent resident status (Form I-485) was "fee receipted" by the Immigration and Naturalization Service on August 26, 1996. It appears from review of subject's "A" file that subject's fingerprint check was initiated on or about August 26, 1996. It also appears from a review of subject's "A" file that a national security check relating to subject's name was initiated on December 21, 2004 pursuant to procedures that were in effect on that date. No definitive response was received by USCIS in response to this request for approximately six months. At that point in time, USCIS sought to expedite said national security check. In order to expedite such a national security check, a District Adjudications Officer "faxes" the "screen printout" that indicates that subject's national security check is "pending" to a contact person in the Headquarters office of USCIS. Such an "expedite" in this matter was requested on June 29, 2005. At that point the contact person at USCIS Headquarters contacts another agency of the federal government to request expeditious handling of said national security check. It is important to note that USCIS' request for "expeditious handling" is the only action that USCIS can take to expedite the processing of a national security check.

7. USCIS will continue to perform any outstanding background and national security checks as expeditiously as possible to help ensure that eligible applicants for lawful permanent resident status wait no longer than is reasonably necessary.

8. USCIS has received the results of the background checks relating to Mr. Abdollahzadeh. The information received requires further investigation and inquiry and USCIS has determined that an interview of Mr. Abdollahzadeh is required before a decision may be rendered on his application for the benefit of legal permanent resident status.

I declare under penalty or perjury that, based upon reasonable inquiry and my knowledge, information and belief, the foregoing is true and correct.

Executed on the 31st day of October, 2005 at Boston, MA

*Denis C. Riordan*
Denis Riordan
District Director
US Citizenship & Immigration Services
US Department of Homeland Security
Boston, MA