UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| SASSAN ABDOLLAHZADEH )<br>)<br>Plaintiff )<br>v. )<br>)<br>DENIS RIORDAN, District Director of )<br>the Boston Office of the Bureau of )<br>Citizenship and Immigration Services, et al., )<br>)<br>Defendants )<br>_____) | Civil Action No. 05-40067 FDS |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT**

COMES NOW Plaintiff Sassan Abdollahzadeh, though counsel and replies to Defendants' opposition to summary judgment.

**Prelimiary Statement**

Defendants misstate the facts in its preliminary statement. Plaintiff filed to adjust status on August 26, 1996 and not April 13, 2002. Complaint and Answer (Compl. & Ans.) ¶17. Plaintiff was interviewed by an officer of the former Immigration and Naturalization Service on December 4, 1996 and not on October 21, 2004. Id. at 18.

**Subject Matter Jurisdiction for Mandamus**

Defendants contend that this court lacks subject matter jurisdiction to grant relief in the nature of mandamus. Defendants contends that the decision to act or not to act on

an Application to Register Permanent Residence or Adjust Status (adjustment application) is a wholly discretionary act and not subject to judicial review.

Plaintiff addressed this argument in his Motion for Summary Judgment. To briefly recap, Plaintiff argues that this court has jurisdiction to grant relief in the nature of mandamus. Courts have distinguished between the Defendant's discretion in the ultimate decision on the application and discretion in whether or not to adjudicate the application at all. Courts have held that the Defendants have a clear non-discretionary duty to adjudicate Plaintiff's application in a reasonable time. Failure to so act is enforceable via relief in the nature of mandamus.

**Defendants have not transgressed the APA**

Defendants contend that the recent "aggressive steps" taken by the Defendants should be considered a factor for finding a violation of the Administrative Procedures Act (APA). Defendants cite no law to support its proposition.

Assuming <u>argumendo</u> that recent "aggressive steps" taken by the agency since December 2004 should be considered in the finding of an APA violation, the court should also consider the steps the Defendants taken to bring about a decision in the in the eight years span between June 1996 and December 2004. Outside of an interview in December 1996 and a request for additional information four years later, the record does not indicate that the Defendants took any action on Plaintiff's adjustment application between June 1996 and December 2004. Compl. & Ans. ¶¶ 18 & 19.

Defendant's argument that a "premature" grant of permanent resident status is a risk to national security is unavailing. There are no facts in the record to indicate that

Plaintiff is a risk to the public or to the nation's security. Defendants have stated that Plaintiff's background check is complete and that the results of this check require additional investigation. Declaration of Denis Riordan ¶8. If the Defendant's are now permitted an indefinite period of time to investigate Plaintiff's background, Plaintiff's application may never "mature". Acceptance of this argument permits the Defendants' to delay adjudication indefinitely, and leave the Plaintiff in immigration limbo in perpetuity. This result is forbidden by the APA. Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004).

Additionally, in the event the Defendants discovers that Plaintiff is a risk to national security, after granting him lawful permanent resident (LPR) status, the INA grants the Defendants the authority to revoke Plaintiff's status, or alternatively, to place the Plaintiff in removal proceedings and deport him from the Unites States. INA §246(A) [8 U.S.C. §1256(a)] (recession of LPR status); INA §§237(a)(4) [8 U.S.C. §1227(a)(4)] (Removal for Security, Terrorism, and Foreign Policy Related Reasons) and INA §240 [8 U.S.C. §1240] (Removal Proceedings). Since the Defendants seem unwilling or unable to render a decision on the Plaintiff's adjustment application, the Defendants must be ordered to render a decision on the Plaintiff's adjustment application.

Defendants' argument that a 'premature' grant of LPR status could potentially threaten national security by giving Plaintiff access to employment in sensitive industries is equally unavailing. The Plaintiff, in his present immigration status, may take any position offered to him, sensitive or not, that does not legally require U.S. citizenship. Employers are generally not permitted to discriminate on the basis of alienage. Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e) prohibits discrimination on the basis

of race, color, religion, and/or national origin.  The Immigration and Nationality Act (INA) prohibits employment discrimination on the basis of citizenship status.  INA §274B(a)(1)(B) [8 U.S.C. 1374B(a)(1)(B)].  Some employers are permitted to require U.S. citizenship for some positions.  42 U.S.C. §2000e-7, 29 C.F.R. §1606, E.O. 11935, 41 FR 37301 (1976), and 31 U.S.C. §699(b).

In the instant matter, the Plaintiff is not seeking U.S. citizenship by way of this action.  The Plaintiff is seeking to compel the Defendants to adjudicate his application for status as a lawful permanent resident alien.  Should this court grant the requested relief and the Defendants grant Plaintiff's application for LPR status, the Plaintiff may obtain employment, sensitive or not, in any position that does not require U.S. citizenship.

To put it another way, all U.S. employers are required to verify all employees identities and employment eligibility.  INA §274A(7)(b) [8 U.S.C. §1324a(7)(b)].  As an adjustment applicant, the Defendants presently grant the Plaintiff employment authorization in one year increments.  8 C.F.R. §274a.13(a).  This one year employment card is commonly referred to as an EAD card.   Presentation of both the EAD card and evidence of LPR status (the I-551 Alien Resident Card or more commonly known as a "green card") will fulfill an employers verification requirements.  Employers are not permitted to insist employees present any particular evidence in establishing an employee's right to work in the US.  INA §274B(6) [8 U.S.C. 1324b(6)].  Since employers are not permitted to insist prospective employees present an Alien Registration Card, the Plaintiff, with his EAD card is presently eligible to accept any position offered to him so long as the position does not lawfully require U.S. citizenship.

Defendants argument that a 'premature' grant of LPR status would permit easier travel on transportation carries is also unavailing. Present law requires individuals wishing to board a commercial airliner to present a valid government issued photo identity document. 49 C.F.R. §1544.201. These documents include but are not limited to a passport, driver's license, state identification card, or military identification card.

The Plaintiff is a citizen of the Republic of Iran, and consequently is eligible to receive a passport from the government of Iran. Compl & Ans. ¶1. Additionally, Plaintiff, in his current immigration status, is eligible to apply for and receive a Massachusetts driver's license or identification card. M.G.L. ch. 159A §9 and Appendix A, Driver's Manual, Comm. of Massachusetts, July 2005. Assuming Plaintiff applied for and satisfied the requirements of the Registry of Motor Vehicles, Plaintiff would be issued a driver's license or identification card. Should the Plaintiff desire to board a commercial airliner, the Plaintiff could obtain the necessary documents in his present immigration status.

Finally, the Defendants cite Danilov v. Aguirre, 370 F.Supp.2d 441 (E.D.Va 2005) in support of their contention that the APA has not been violated. Danilov is easily distinguished on its facts. In Danilov, the court held that it lacked jurisdiction to adjudicate a claim of unreasonable delay under the APA. The court found it did not have jurisdiction because the alien's naturalization examination was not complete, and would not be complete until the Federal Bureau of Investigations (FBI) and completed its background check.

In the instant matter, the Plaintiff's background check is complete. Dec. of Riordan at ¶8. The Defendants have now chosen to investigate the Plaintiff's background

further. Id. Given that the Defendants waited eight years before beginning its 'other agency' background check, the Court must find that the Defendants have unreasonably delayed the Plaintiff's adjustment application, order the Defendants to finish their investigation, and adjudicate Plaintiff's application by a date certain.

**Conclusion**

A nine year delay in the adjudication of an adjustment application should shock the conscience of this Court. Since the Defendants have unreasonable delayed the Plaintiff's adjustment application, the Court must grant the Plaintiff relief in the nature of mandamus, and issue an order compelling the Defendants to adjudicate the Plaintiff's application within 30 days of this court's order or by a date to be set by this Court.

                                                Respectfully Submitted
Sassan Abdollahzadeh
by his Attorney

Dated: November 3, 2005         /s/ Richard M. Green_____
Richard M. Green  BBO#650973
57 E. Main St. Suite #211
Westborough, MA 01581

Tel:   (508) 616-0024
Fax:   (508) 616-0221